UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

SULLIVAN & CROMWELL LLP,         :

                Plaintiff,         :  07 CV 11616

          v.                    :
                                          COMPLAINT

ELECTRONIC EVIDENCE DISCOVERY   :
INCORPORATED,                               JURY TRIAL
                                   :  DEMANDED

                Defendant.         :

-------------------------------------------------------------X

        Plaintiff Sullivan & Cromwell LLP ("S&C"), by its undersigned attorneys, alleges, upon knowledge as to its own conduct and otherwise upon information and belief, for its complaint as follows:

## NATURE OF THE ACTION

        1.    This action arises out of defendant Electronic Evidence Discovery Incorporated's ("EED") provision of untimely and inaccurate electronic discovery services to plaintiff S&C in connection with a litigation involving an S&C client, in breach of a written agreement between EED and S&C.

        2.    EED publicly touts its "proven results and commitment to providing the best customer service in the industry," and boasts that it "delivers results that meet and surpass our clients' expectations." As set forth below, however, in this instance EED repeatedly missed deadlines, was unable to provide accurate information to S&C about when electronic documents would be available for review or ready for production, and consistently lacked quality control, in breach of its contract.

3. Notwithstanding EED's poor performance and breach of the agreement, EED seeks an additional $710,060.28 from S&C for the sub-standard and untimely services that it performed.

4. S&C therefore seeks a declaration that EED breached the agreement with S&C, and that EED is therefore owed no further compensation or payment of any kind under the agreement.

## THE PARTIES

5. Plaintiff S&C, a New York limited liability partnership with its principal office located in New York, New York, is an international law firm.

6. Defendant EED, a Washington corporation with its principal place of business in Kirkland, Washington, is an electronic discovery vendor.

## JURISDICTION AND VENUE

7. This Court has diversity jurisdiction over the claims and parties herein pursuant to 28 U.S.C. § 1332, in that plaintiff and defendant are citizens of different states and the amount in controversy is in excess of $75,000 exclusive of interest and costs.

8. Venue is proper in this District based upon 28 U.S.C. § 1391(a) in that a substantial part of the events and omissions giving rise to this action arose in this District.

## FACTUAL BACKGROUND

9. S&C was retained by a client to represent it in connection with a lawsuit filed in this District (the "Client Litigation"). The relief sought in the Client Litigation included a preliminary injunction, among other relief. In early August 2006,

the court ordered expedited discovery in connection with the preliminary injunction motion and required that all document discovery be completed within 30 days.

10. S&C personnel interviewed a number of electronic discovery vendors to provide electronic discovery services in connection with the Client Litigation. During those discussions, S&C informed the vendors, including EED, that, pursuant to court order, all document discovery had to be completed within 30 days. EED committed to S&C that it could perform the required services within the 30-day discovery period. Thus, EED knew from the outset that time was of the essence in the Client Litigation and that it would be required to load, process and produce data on an extremely expedited timetable.

11. On or about August 18, 2006, S&C and EED entered into a written agreement, pursuant to which EED agreed to provide electronic discovery services to S&C in connection with the Client Litigation (the "Agreement").

12. Pursuant to the Agreement, EED represented and warranted to S&C, among other things, that EED "shall perform all Services in a professional and workmanlike manner and in a manner consistent with industry standards."

13. The electronic discovery services that EED was required to perform for S&C under the Agreement included loading the electronic data and electronic documents supplied by S&C's client, removing electronic documents that were exact duplicates of other documents, applying specified search terms to the electronic documents to identify documents that were potentially relevant to the litigation, and making available the potentially responsive electronic documents on an EED web-based

platform that could be utilized by S&C personnel to review the electronic documents in order to identify documents that had to be produced in the Client Litigation.

14. Once S&C personnel identified responsive documents that had to be produced in the Client Litigation, EED was required to convert those documents from their native format to TIFF format, assign a unique Bates numbers to each page of the electronic documents that were to be produced, affix to each electronic document the appropriate confidentiality designation (e.g., Non-Confidential, Confidential, or Highly Confidential – Outside Counsel Only) under the protective order governing the Client Litigation, and copy those electronic documents onto CD-ROMs, DVDs or hard drives and provide them to S&C for production in the Client Litigation.

15. During the discovery for the preliminary injunction motion, S&C experienced numerous problems with the services performed by EED. Among other problems, EED repeatedly missed deadlines that it established for sending CD-ROMs, DVDs and hard drives to S&C for production in the Client Litigation.

16. As merits discovery progressed, S&C continued to experience significant problems with EED's performance under the Agreement. EED's poor performance under the Agreement can be divided into two main categories:

   (a) EED's delays in loading electronic data for review by S&C personnel, EED's inability to keep S&C informed of when data and the volume of data that would be ready to review so that the firm could make appropriate staffing arrangements, and EED's failure to meet deadlines (even those set by EED itself) for delivering production CD-ROMs, DVDs and hard drives to S&C; and

   (b) EED's quality control failures.

**EED's Delays in Loading Data, Inability To Keep
S&C Informed and Missed Deadlines**

17.     Throughout April and May 2007, EED failed to perform adequately the services under the Agreement. EED failed to:

(a)     load data in an efficient manner so that it could be reviewed by S&C personnel;

(b)     provide accurate and timely updates on when new data would be available for S&C personnel to review;

(c)     provide accurate estimates of the amount of new data that would be available for review by S&C personnel; and

(d)     comply with deadlines (including those set by EED itself) for providing CD-ROMs, DVDs and hard drives to S&C for production in the Client Litigation.

18.     EED's repeated delays and inability to provide accurate information to S&C regarding the progress of EED's work significantly impeded S&C's ability efficiently to review the data prior to the May 30, 2007 merits discovery cutoff.

19.     For example, on Friday, May 4, 2007 (26 days before the merits discovery cutoff) S&C informed EED in an e-mail that S&C's "reviewers will not have anything to review for the next few days unless there is more data loaded" by EED. EED responded that the data was "in the loading process" and EED did not "expect to migrate any additional data to review until late this weekend." In response to follow-up questions from S&C, EED personnel said "we cannot provide you with an estimate as to what volume can be expected to be migrated to review."

20. On April 25, 2007, S&C's client sent to EED three tapes containing electronic documents for loading and processing. By May 6, 2007 (24 days before the discovery cutoff), EED still had not loaded those tapes for processing and had not notified S&C or its client about an error EED had encountered that was preventing EED from processing the tapes for S&C personnel to review. Had EED informed S&C in a timely manner that it was having difficult loading the tapes, S&C could have coordinated with its client to resolve the issues sooner.

21. On May 15, 2007, EED informed S&C by e-mail that a production of CD-ROMs "is on track for delivery to your office Thursday," May 17. On May 17, 2007, S&C inquired of EED about the status of the production that EED had promised to deliver that day. EED responded that there had been "a delay," but stated that the production CD-ROMs would be delivered to S&C on May 18, 2007. Later in the day on May 17, however, EED changed its story again and stated that only a small part of the promised production (approximately 350 documents) would be available on May 18 and that the bulk of the promised production would not be delivered to S&C until Monday, May 21, 2007.

22. On May 15, 2007, S&C's client sent data to EED for loading and processing. By May 21, 2007—only 9 days before the discovery cutoff—EED had still not made that data available for S&C personnel to review.

23. As a final straw, on May 23, 2007—just a week before the discovery cutoff—EED informed S&C that it was unable to load any additional data or to "commit to any deliverables" at all, because EED's servers were down. EED was unable to provide S&C any information as to when EED might be able to resolve its server

problem. The fact that EED's servers went down a week before the discovery cutoff hindered S&C's ability to complete its production by the fast-approaching cutoff for merits discovery.

**EED's Failure Adequately To Quality Check
Its Productions Resulted In Numerous Errors**

24. In addition to EED's numerous delays, its inability to keep S&C informed of its progress, and its failure to meet deadlines, EED also repeatedly failed adequately to quality check its productions. As a result, EED included on production CD-ROMs, DVDs and hard drives documents that should not have been produced and improperly labeled the confidentiality designations on production media.

25. For example, S&C advised EED that a certain category of documents could not be produced without an additional level of review by S&C personnel. EED created a separate folder on the electronic review platform for the category of documents that required an additional level of review prior to production. On May 29—the day before the discovery cutoff—EED delivered to S&C five CD-ROMs, 19 DVDs and two hard drives for production in the Client Litigation. When S&C personnel conducted their own quality control of the production media prepared by EED, S&C personnel discovered that the CD-ROMs, DVDs and hard drives improperly included documents from the category of documents that could not be produced without an additional level of review by S&C. Although these documents should not have been included on the production media prepared by EED, EED failed to follow S&C's instructions and included those documents on production media. In addition, EED either did not perform any quality control on the production, or failed to discover its error

during the course of its own quality control review. As a result of EED's error, S&C had to request that EED prepare replacement media to be produced in the Client Litigation.

26. Demonstrating EED's lack of quality control, the replacement media that EED created to correct its prior error and provided to S&C for production contained an entirely different error that EED also failed to discover. During S&C's quality control review of the replacement CD-ROMs, DVDs and hard drives, S&C personnel discovered that the replacement production media prepared by EED improperly included material that had been designated as "Non-responsive" by S&C personnel and therefore should not have been produced in the Client Litigation. Thus, the replacement CD-ROMs, DVDs and hard drives prepared by EED, like the original ones EED prepared, were faulty, and EED failed to discover these errors.

27. Similarly, on May 25, 2007, EED delivered two CD-ROMs and three hard drives for production in the Client Litigation. S&C personnel conducted their own quality control review of the CD-ROMs and hard drives that EED had prepared and discovered that EED had provided two identical CD-ROMs and had included the wrong confidentiality designation on the labels of the three hard drives. Either EED conducted no quality control review of this production or its faulty quality control review failed to discover these errors.

28. A third example of EED's lack of quality control was its inability to generate an accurate list of bates numbers for a specific category of documents that S&C had requested.

29. In response to S&C's request, EED provided several lists of bates numbers to S&C, but S&C's quality control review of each list provided to S&C revealed that each and every list provided by EED was inaccurate.

30. After EED's repeated failures to generate an accurate list of bates numbers, S&C was required to take matters into its own hands, and it diverted its own resources from other projects in order to generate an accurate list of bates numbers. In an e-mail to S&C, EED acknowledged the "severity of the matter" of EED's inability to generate an accurate list of bates numbers and stated "I can only say I'm sorry for all the difficulty, extra time and inconvenience this is causing on S&C's end."

**EED Has Demanded Payment In Full From S&C Notwithstanding EED's Poor Performance and Breach of the Agreement**

31. As a result of EED's poor performance detailed above, EED has breached the Agreement.

32. EED's breach of the Agreement required S&C personnel, at considerable expense, to perform services which EED should have, but failed to perform.

33. Notwithstanding EED's poor performance and breach of the Agreement, EED billed S&C in full for the untimely and inaccurate work that it had performed in connection with the Client Litigation. The invoices that EED submitted to S&C for the faulty work it had performed in connection with the merits discovery phase of the Client Litigation total approximately $1,060,000. Approximately $656,000 of the invoices that EED submitted to S&C remain unpaid as of this date. S&C has paid approximately $404,000 of this amount.

34.  On December 12, 2007, EED sent a demand letter to S&C stating that, according to EED's calculations, S&C owed EED approximately $710,060.28 under the Agreement.

## COUNT ONE
### (For Declaratory Judgment)

35.  S&C repeats and realleges the allegations contained in paragraphs 1 through 34 herein.

36.  By reason of the foregoing, a real and justiciable controversy exists, and S&C seeks a declaration that EED breached the Agreement and that EED is owed no further compensation or payment of any kind under the Agreement.

WHEREFORE, S&C requests the Court to enter judgment against defendant EED as follows:

1.  a declaration that EED breached its Agreement with S&C and that EED is owed no further compensation or payment of any kind under the Agreement;

2.  awarding reasonable attorneys' fees and costs of this action; and

3.  such other and further relief as may be just and proper.

**JURY DEMAND**

Plaintiff S&C demands a trial by jury as to all issues triable by a jury.

Dated: New York, New York
December 28, 2007

Stephanie G. Wheeler

David B. Tulchin (DT-5557)
Stephanie G. Wheeler (SW-7751)
125 Broad Street
New York, New York 10004
(212) 558-4000

*Attorneys for Plaintiff Sullivan & Cromwell LLP*